HUSTED, The NELLIE. See Case No. 10,-098.

---

## Case No. 6,952.

### HUTCHINGS et al. v. MUZZY IRON WORKS.

[6 Chi. Leg. News, 27; 8 N. B. R. 458.[1]]

District Court, D. Maine. 1873.

**BANKRUPTCY—MORTGAGE—RIGHTS OF MORTGAGEE..**

A mortgagee can not. after proceedings in bankruptcy have been commenced, without the consent of the bankrupt court, take possession of the bankrupt estate held by his mortgage, or process under the state law, to foreclose his mortgage. where the assignee objects. He should apply to the bankrupt court, which under the act of congress [of 1867 (14 Stat. 517)] has exclusive jurisdiction over the mortgaged estate.

[Cited in Byrd v. Harrold, Case No. 2.269.]
[Cited in Weeks v. Prescott, 53 Vt. 69.]

The questions which arose in this case were certified to the judge by the register upon his certificate, under section 6, and upon the following agreed statement

---

[2] [From 2 Am. Law T. Rep. Bankr. 53.]

[1] [8 N. B. R. 458, contains only a partial report.]

of facts: The bankrupts,[2] by their mortgage dated 24 February, 1871, and duly recorded, conveyed to the Muzzy Iron Works of Bangor, several parcels of land situate in Bradley, in said district. One of said parcels is a saw-mill, and said conveyance includes "all the mills, buildings situate on said premises, together with all machines, machinery and apparatus," to secure the payment of $4613.40, according to the tenor of said bankrupts' four several promissory notes, payable to said iron works, with annual interest. The first of said notes has been paid, but the other three and all interest thereon are unpaid; two of them being overdue, and held by said Muzzy Iron Works. On the 25th day of July, 1872, and after the filing of the petition in bankruptcy, and after they had been adjudged bankrupts, and before the appointment of assignees, said Muzzy Iron Works, by their treasurer, Franklin Muzzy, Esq., with a view to foreclose said mortgage in the manner provided by item 3, § 3, c. 90, Rev. St. Me., and to receive and appropriate the rents and income of said mill and mortgaged property towards the payment of said unpaid notes, and the discharge of said mortgage, entered peaceably and openly and took possession of all of said mortgaged premises, and held the same by an agent appointed by said iron works, until after the appointment of assignees; but the certificate required in said item of said section of the Revised Statutes has never been made or recorded in the registry of deeds. At the time of the filing of the petition in bankruptcy against said Blackman Bros., they owned the equity of redemption of said premises, and were in the possession and occupancy of the same as mortgagors, and remained in possession and occupancy of the same until the Muzzy Iron Works took possession as aforesaid. Said assignees [Jasper Hutchings and others] and creditors deemed it important, and for the interest of all parties, that said mill should at once be put to work, manufacturing the logs and lumber then at the mill. Accordingly the assignees went the next day after they were appointed and qualified to said Muzzy, and expressed to him doubts as to the right of the Muzzy Iron Works to possession of said mill, or to the rents and profits for the use of it; and it was then and there agreed between him and the assignees that the assignees should have the use of said mill—said use not to interfere with the possession of the same by the Muzzy Iron Works, such as it then was—and that this agreement and arrangement should not prejudice the rights of either party; and that the right of the Muzzy Iron Works to possession and rents and profits, if it should be, or deemed to be material to determine the same, should at some future time be determined by the proper tribunal. This arrangement has been carried into effect, and the assignees have had and now have the use of said mill. Said Muzzy Iron Works are second mortgages, and took possession of said premises by consent of the first mortgagee, and it is very questionable whether all of said mortgaged property, including rents and profits, is sufficient to pay both mortgages and a large amount of taxes. Said parties respectfully ask the opinion of the court whether, 1st, said iron works had a right, as between said parties, the first mortgagee not interfering, to take possession as aforesaid, or being in possession so as aforesaid, to hold and retain possession of said premises against the assignees for the purpose of foreclosure, or to enable them to appropriate the rents and profits towards the payment of the mortgage debt; 2d, whether said Muzzy Iron Works, the first mortgagee not interfering, are entitled to the rents and profits of said mill and premises from the time of said agreement between said Muzzy Iron Works and assignees, and whether said assignees shall account to them accordingly.

Jasper Hutchings, for assignees.
A. G. Wakefield, for Muzzy Iron Works.

By HAMLIN, Register:

The argument of the solicitor for the Muzzy Iron Works is, that the legal freehold of the mortgaged premises is in the mortgagees, and unless restricted by the conditions in the mortgage, they might enter at once and hold the same even before condition broken, and with force, etc. Such are undoubtedly the relations of mortgagor and mortgagee at common law. It is sufficient to observe that the bankruptcy of the mortgagors changes the remedy of the mortgagees. Per Lowell, J., Foster v. Ames [Case No. 4,965]. And "proceedings in bankruptcy are based upon principles of equity." Per Fox, J., in Re Stowe [Id. 13,513]. The common law undertakes to decide only between the plaintiff and defendant, and after proceedings in bankruptcy are commenced, where various classes of creditors are interested in the estate, resort must be had to equity in order "to secure the rights of all parties and due distribution of the assets among all the creditors." An unbroken series of decisions concur in establishing the jurisdiction of the district court sitting in bankruptcy over the parties and the subject matter from the filing of the petition, and withholding all power from the mortgagees to take possession of any portion of the bankrupt estate without the consent of the bankrupt court. The solicitor cites Pennington v. Sale [Id. 10,939], and In re Noakes [Id. 10,281], in support of the principle that "assignees must surrender to owners property found in the possession of the bankrupt, but belonging to others." In the former, the court retained possession of the property in controversy, and in the latter, held "that if the assignees are satisfied

---

[2] [Blackman Brothers.]

that the property taken by them did not belong to the bankrupt, they should return it without delay to the owners;" thus recognizing the distinction between cases where, on the one hand, the property does not belong to the bankrupt, and therefore does not pass to the assignee, and where, on the other hand, the property belongs to the bankrupt, and being a part of his estate, by the assignment becomes vested in the assignee. The land mortgaged to the Muzzy Iron Works by Blackman Brothers is a part of the bankrupt estate, passed to the assignee by the assignment, and in the same sense of the term as employed by the court, supra, "belonged" to the bankrupt.

The intent of congress in preventing interference with the bankrupt's estate by precepts from other courts after proceedings in bankruptcy have been commenced, is primarily to enable the bankrupt court to have and retain the custody and possession of the bankrupt's property for the purposes of the bankrupt act. This intent is as much contravened by these mortgagees taking possession in the manner they did, as it would have been if they had taken possession under process of a state court after proceedings in bankruptcy were commenced. If such possession is valid, then no reason is perceived why persons having other kinds of liens, whether by statute, contract or otherwise, on real or personal estate, may not also take possession of the property upon which they have a lien after proceedings in bankruptcy are commenced, whenever by the laws of the state they can legally do so without resort to process from the state courts, and whenever by so doing they will benefit themselves—a claim wholly inconsistent with the prompt, speedy and advantageous settlement of the bankrupt estate by the assignee, contemplated by the bankrupt act, and in opposition to the settled practice of this court. The concession of such right to possession before the determination of the validity of the lien or mortgage, might prevent assignees from bringing that question into court, and thus work serious injury to other creditors, and practically deprive the bankrupt court of its jurisdiction in many cases. Says Hawley, J., in Re Snedaker, 3 N. B. R. (Quarto) 155, in a full and elaborate opinion: "For just and equitable purposes, and to guard against fraud, the act rightfully takes the pledged property or lien out of the power of the secured creditor's control or management in reducing it to money in his chosen way without responsibility, and places it in the hands of the assignee of the bankrupt, who, being an agent of the court, and at the same time the representative of the rights of all parties in interest, is supposed to be above all temptation to fraud, and directs him in such capacity, and under the pledge of his official bond as assignee and under the direction of the court, to convert such mortgaged or pledged property into

money, and to distribute the same under the provisions of the act, with due regard to all priorities shown to exist in the proceedings of bankruptcy by proofs of claims against the bankrupt. So far from taking any right or rights from the secured creditor under the mortgage, lien or pledge by which he holds the same, it simply regulates the modes and means of foreclosing the mortgage or other lien, and of reducing such security to money, in order that the court may be able to enforce exact justice." * * * No better illustration of the justice of these interpretations of the bankrupt act can be found than in the present case. In their report at the second general meeting, the assignees say that they are completing delivery of staves manufactured by them under a contract with the Cobb Lime Company, made by the bankrupts with that company before proceedings in bankruptcy, and from stave material which they found on hand at the mills, and expect, from this source, to derive sufficient funds to pay off a large amount of priority claims due the workmen, as well as other debts, for the benefit of creditors; that this is the principal source from which they are now realizing money for the estate. If these mortgagees were entitled to the possession of the mills without invoking the aid and consent of the bankrupt court thereto, the creditors might lose the benefits which they are now receiving from the stave contract. What obligation would rest on the Muzzy Iron Works, when once in possession, to complete the stave contract, or pay over the proceeds to the bankrupt court?

1. For these reasons, the register is of opinion that the first question arising upon the certificate should be answered in the negative.

2. Being of the opinion that the Muzzy Iron Works should apply to the bankrupt court on petition, in accordance with the usual practice, it seems that the court should not answer the second question in the present stage of proceedings.

FOX, District Judge. I concur in the above conclusions of the register.

A petition having been subsequently presented to the court, in accordance with the foregoing decision, by the Muzzy Iron Works, the following order was made thereon: "The assignee of the bankrupts having acknowledged notice of the within petition of the Muzzy Iron Works, and all parties having been duly heard thereon, it is ordered, adjudged and decreed by the court, that said petitioners are entitled to have and recover from said assignees, a reasonable compensation for the use of said premises mortgaged, from the 7th of August, 1872, so long as said assignees shall continue in the occupation thereof, the amount so to be paid, to be determined by Register Hamlin, to

whom the petition and this order is referred for that purpose."

For the judicial history of section 1 of the bankrupt act (commonly called the jurisdiction clause), the reader is referred to Ex parte Christy, 3 How. [44 U. S.] 308, opinion by Judge Story.